## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEE E. JOHNSON and JOEY MARIE KELLY, on behalf of themselves and all others similarly situated, | ) ) ) | Civil Action No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| PRICELINE.COM INC., | ) | |
| | ) | |
| Defendant. | ) | March 24, 2011 |

## CLASS ACTION COMPLAINT

Plaintiffs Lee E. Johnson ("Johnson") and Joey Marie Kelly ("Kelly"), by their undersigned attorneys, on behalf of themselves and all others similarly situated ("Plaintiff Class" or "Putative Class"), for their Class Action Complaint against Defendant, Priceline.com Inc., ("Priceline"), state as follows:

### Nature of the Action

1.      This complaint concerns the intentional violation of Priceline's duties as a travel agent of Johnson, Kelly, and others similarly situated in procuring hotel rooms for them through Priceline's *Name Your Own Price®* service ("NYOP").

2.      Priceline acted as a travel *agent* for Johnson and Kelly in procuring hotel reservations for them.

3.      Johnson and Kelly, following the steps on Priceline's website, chose the dates, location, quality level and the price they would pay for the rooms they engaged Priceline to

book on their behalf. They gave Priceline their credit card information and authorized it to charge their credit cards if it found a room at a hotel that met their criteria and which would accept their bids.

4.      Under the common law of the State of Connecticut, as well as Restatement of Agency 2d, Section 388, an agent employed to purchase on behalf of his or her principal may not purchase for his or her own account and then sell to the principal at a secret profit. Any such secret profits are the property of and must be disgorged to the principal.

5.      Similarly, under the common law of the State of Connecticut, a constructive trust arises when an agent purchases for his own account, or for his own benefit, property constituting the subject matter of the fiduciary relationship, in violation of the trust or confidence reposed in the agent. The damages resulting from violation of this constructive trust are equal to the profits made on the sale of the property of and must be paid over to the principal.

6.      Johnson and Kelly, individually and for a class of persons similarly situated, seek disgorgement of the undisclosed profits retained by Priceline without their knowledge or consent in connection with procuring their hotel rooms.

**Jurisdiction and Venue**

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and complete diversity exists amongst Johnson and Kelly, and Priceline.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Priceline's principal office is located in this District. Priceline's contracts provide for litigation in this

2

District ("state and federal courts located in Fairfield County, Connecticut"), and a substantial part of the events or omissions giving rise to this claim occurred in this judicial District.

## Parties

9.      Johnson and Kelly are Illinois citizens and residents, who reside in the City of Chicago, Cook County, Illinois.

10.      Priceline.com, also known as Priceline.com Incorporated, or Priceline.com Inc., is a Delaware corporation, with its principal place of business at 800 Connecticut Avenue Norwalk, Connecticut. Priceline is a leading online travel agent that offers its customers a broad range of travel services, including the securing of hotel rooms, car rentals, airline tickets, vacation packages, cruises and destination services.

11.      In the United States, Priceline offers its customers the ability to purchase travel services in a price-disclosed manner, under which the cost of the services is displayed before the purchase is made. It also affords its customers the opportunity to use its *Name Your Own Price*® service, which allows customers to name the price they would pay for travel services at discounted prices.

12.      The allegations in this complaint pertain only to hotel rooms booked using Priceline's *Name Your Own Price*® service.

3

## Common Allegations

### Priceline's Business Models

13.      Priceline has conducted its web-based hotel booking and room sale business for a number of years, using three different business models:  the "agency model" (also called the "traditional" or "postpaid" model) when simply booking rooms for consumers, the "merchant model" (or a hybrid or other characterization of the merchant model) when selling rooms to consumers for a stated and disclosed price, and a pseudo-auction model also used to sell rooms to consumers, who are asked to "bid"-or  specify how much they would be willing to pay a hotel for rooms meeting certain criteria.

14.      In the agency model, Priceline simply books a room for a consumer at a hotel chosen by the consumer and charges the hotel a stated fee for its services. The consumer pays the hotel directly for the room.  In the agency model Priceline does not receive a mark up on the room rate. Its only compensation is a clearly stated fee for its service.

15.      In the Merchant Model, Priceline contracts with hotels to provide prices for hotel rooms they will accept from Priceline if a consumer purchases a room from Priceline.  Priceline then marks up the Wholesale Rate and offers the rooms to consumers at a Retail Room Rate, retaining the difference as profit. Priceline does not disclose the amount of its Mark-Up or profit.  Priceline determines: (i) the Mark-up over the Wholesale Rates (thereby setting the marked-up Retail Room Rate that the consumer will pay), (ii) the cancellation policies applicable to the consumer, and (iii) sells the rooms to the consumer.  The consumer pays Priceline the Retail Room Rate, as well as all taxes and Priceline's fees by credit or debit card before ever arriving at the hotel and before occupying the hotel room.

4

16.     This lawsuit is about Priceline's third model, a pseudo-auction model marketed under the trade name "Name Your Own Price®" (the "NYOP model"). The consumer can select the NYOP model by choosing to "bid now" on a hotel room. The bidding process requires the consumer to specify the dates for which a room is being sought, the geographic location in the destination city where he or she would like to stay (e.g., Chelsea Area, Midtown East, Upper West Side) and the minimum quality level of the hotel (e.g., four-star). Once the consumer has made these choices, the consumer enters the "bid price," the amount the consumer offers to pay a hotel if Priceline is successful in finding one a hotel to accept this amount for a hotel room meeting the consumers' specifications. If the bid is accepted by a hotel, the consumer is then advised of the total price he or she will have to pay, including, for the first time, the amount of Taxes and Service Fees that will be due. Upon information and belief, unknown to the consumer, Priceline will not book a room on behalf of the consumer unless the price Priceline pays to the hotel is less than the consumer's bid, thereby allowing Priceline to markup the cost of the room to ensure Priceline a profit on the transaction.

17.     Under the NYOP model, the consumer is deceived to believe that Priceline is acting as a travel agent with the client's best interest in mind. In its agreement with the consumer, Priceline states that it is not the vendor or co-vendor of the room. The NYOP model is deceptive because it suggests to the consumer that Priceline is negotiating a low price for the consumer when in fact Priceline is seeking a lower price for itself to increase the amount of its undisclosed profit. Under this pseudo-auction model consumers are led to believe that Priceline is acting as their agent and negotiating a lower price from the hotel on their behalf, but instead Priceline is searching for a lower price for itself, then marking up the hotel price and selling it to

its customer at the price it knows the consumer is willing to pay. Priceline leads the consumer to believe that the hotel is renting the room to the consumer for the price he or she is willing to pay.

18.     Priceline described its *Name Your Own Price*® hotel booking service, as follows in a 2006 press release:

> Priceline.com's Name Your Own Price(R) hotel service is easy to use. Start by filling in your desired destination, dates and the number of rooms. Then select your desired area of the city and the hotel star level or category you want. (Priceline.com works with hotels in all of the most popular star categories from one- to four-stars, as well as resorts). Name the per-night price you want to pay for a room. You'll know almost instantly **whether your offer was accepted and <u>which hotel accepted your offer.</u>** Priceline.com's Name Your Own Price(R) hotel option is unique and different from other major travel reservation services. With Priceline's Name Your Own Price(R) reservation service, the exact hotel is shown only after purchase. Name Your Own Price(R) customers can save up to 50% off the published prices shown on other major online travel reservation services. (Emphasis supplied)

### Plaintiffs' Transactions

19.     Sometime prior to April 13, 2008, and to October 16, 2009, Johnson and Kelly, respectively, following the step-by-step instructions on Priceline's website, specified that they were seeking four-star hotels in Richmond and Boston.  As required by Priceline, they supplied Priceline with their credit card information and authorized Priceline to charge their credit cards for the entire cost of their stay, if Priceline found hotels that would accept their bids for rooms meeting their criteria.

20.     Johnson bid $125.00 per night.

21.     Shortly after placing his bid, Johnson received a confirmation from Priceline stating: "Congratulations, your price of $125 was **accepted by Omni Richmond Hotel**."

(Emphasis supplied).  His credit card was immediately charged $294.36, which included $44.36 that Priceline added for "Taxes and Service Fees."

22.     Without Johnson's knowledge or consent, Priceline paid the Omni Richmond Hotel less than the $250 dollars ($125 per night) that Priceline reported the hotel had accepted, and retained the difference as a secret profit on the transaction.

23.     Kelly bid $150.00 per night

24.     Shortly after placing her bid, Kelly received a confirmation from Priceline stating: "Congratulations, your price of $150 was **accepted by Sheraton Boston Hotel**." (Emphasis supplied).  Her credit card was immediately charged $359.22, which included $59.22 that Priceline added for "Taxes and Service Fees." (This includes $10 for travel insurance.)

25.     Without Kelly's knowledge or consent, Priceline paid the Sheraton Boston Hotel less than the $300 dollars ($150 per night) that Priceline reported the hotel had accepted. Priceline then marked up the price of the room back up to $300, sold it to Kelly and retained the difference as a secret profit on the transaction.

26.     Priceline held itself out as agent and acted as agent in procuring hotel rooms for Johnson and Kelly and the other members of the Putative Class.

27.     Priceline, throughout the process of soliciting Johnson's and Kelly's bids held itself out explicitly as Johnson's and Kelly's agent in transmitting those bids and finding them rooms at hotels that would accept their bids in Richmond, Virginia and Boston, Massachusetts.

28.     A typical statement that Johnson and Kelly encountered during the booking process that evidence Priceline was acting as their agent includes the following:

> Congratulations, your price of $125 (or $150) was **accepted by Omni Richmond Hotel  (the Sheraton Boston Hotel)**. (Emphasis supplied).

7

29.     This is exactly the way Priceline conveys its role in the press release, cited at Paragraph 18 above: "You'll know almost instantly **whether your offer was accepted and** **which hotel accepted your offer.**" (Emphasis supplied).

### Facts Common to Plaintiffs and the Plaintiff Class

30.     Priceline's advertisements also present Priceline as the agent and advocate for the customer seeking discount rates from the hotels providing the rooms.

31.     The "Priceline Negotiator" series of television commercials, in which William Shatner personifies Priceline, illustrates how Priceline presents itself to its consumers.

32.     In one notable commercial Shatner, on behalf of a customer, uses his seductive powers to convince a hotel reservationist to lower the room price on a four- star hotel in Chicago from $200 to $99.00. http://www.youtube.com/watch?v=hBNL9xx3Ie0.

33.     Another example begins with Shatner answering the phone sitting in a racing car: "You need a hotel deal. I'm on it." Followed by a scene where Shatner is a limousine driver threatening a hotel owner by driving dangerously until he, in fear for his life, agrees to offer discounts.

http://www.youtube.com/watch?v=bf3zyvuqoBM&feature=PlayList&p=FEE47F3C0437FEAB &index=53&playnext=2&playnext_from=PL.

34.     In both cases, and in many other advertisements as well, the client is buyer, the hotel is the seller and Priceline is portrayed as advocate/agent for the customer.  There is no suggestion that the reservationists or owners have been shaken down by Shatner (i.e., Priceline) for his own benefit and that he will sell the room to the customer with an undisclosed Mark-Up.

8

This is made clear in Priceline 101 a commercial starring Mr. Shatner where he states unequivocably that Priceline receives huge discounts from hotels and passes them on to the consumer. http://www.youtube.com/watch?v=gPPZS0tzQtY

35.     Priceline retained secret profits in violation of its duty as agent without the consent of Johnson and Kelly and the other members of the Putative Class.

36.     Priceline never discloses on its website, or at any stage in the bidding process, including the confirmation, that it is paying the hotels less than the price bid by the customer and then marking up the room price, selling it to the consumer and keeping the difference. In fact, as demonstrated above, it explicitly states that the hotel has accepted the customer's offer for the exact price the customer bid and that all that Priceline charges for its services is a fee included in the "Taxes and Service Fees" or "Taxes and Fees.

37.     Priceline never disclosed its secret profit and never asked for the consent of Johnson or Kelly for its retention of this secret profit.

38.     Even in its initial public offering prospectus, Priceline described its *Name Your Own Price*® service for hotels as follows: "With Priceline.com's hotel room service, a traveler names his price, quality rating and geographic zone in any of over 200 U.S. cities. **The buyer agrees to stay in any major hotel that accepts his price.**" (Emphasis supplied). The hotel, however, does not accept the customer's bid but instead accepts a lesser amount paid by Priceline for its own benefit, and not the customer's.

39.     Priceline has always taken an undisclosed "spread" in its *Name Your Own Price*® service. Priceline's founder, Jay Walker, explicitly stated  how Priceline makes its money on *Name Your Own Price*® in an interview by Charlie Rose, on November 11, 1999, a

9

few months after the company's initial public offering on April 1, 1999.  This interview can be found at http://www.charlierose.com/view/interview/3991.  Speaking of the Airline service, Walker responds to Rose's question "and where is the revenue for you?" by stating "In the airline service we make the difference between the price the consumer pays and the price we buy it from the airline."

40.     Searching deep inside Priceline's initial public offering prospectus one can find an explicit statement of Priceline's source of revenues from its *Name Your Own Price®* service for hotels: "With respect to airline and hotel reservation services, we earn the spread between the customer's named price and the fare or rate charged by the seller."

41.     The same fact can be gleaned, with great difficulty, from Priceline's Form 10-K, for the year ended December 31, 2008.  There is no longer an explicit statement that Priceline is taking a spread.  Rather,  one must pull together the descriptions of Merchant Revenues and the related Cost of Revenues and the fact that *Name Your Own Price®* hotels are included in the laundry list of services that generate "Merchant Revenues" to puzzle out the fact that Priceline is indeed taking a "spread" on these transactions.

From Priceline's Form 10-K for the year ended December 31, 2008: "Business" Section:

> For the year ended December 31, 2008, we had revenues of approximately $1.9 billion comprised of "merchant" revenue, "agency" revenue and "other" revenue.  Merchant revenues are derived from transactions where we are the merchant of record and, among other things, select suppliers and determine the price we will accept from the customer. **Merchant revenues, which represented the substantial majority of our total revenues** **in 2008, consisted of: (1) transaction revenues representing the selling price of *Name Your Own Price®* hotel rooms**, rental cars and airline tickets and price-disclosed vacation packages services; (2) transaction revenues representing the amount charged to a customer, less the amount charged by suppliers in connection with the hotel rooms  provided  through  our  merchant  price-disclosed  hotel  service;

(3) customer processing fees charged in connection with the sale of both *Name Your Own Price®* and price-disclosed hotel rooms and *Name Your Own Price®* airline tickets and rental car services; and (4) ancillary fees, including GDS reservation booking fees related to certain of the services listed above. Agency revenues are generally derived from travel related transactions where we are not the merchant of record and where the prices of our services are determined by third parties. Agency revenues consisted primarily of: (1) travel commissions and (2) GDS reservation booking fees related to certain of the services listed above. Other revenues are derived primarily from advertising on our websites.

From the "Management's Discussion and Analysis" Section:

### *Revenues*

Merchant revenues are derived from transactions where we are the merchant of record and, among other things, select suppliers and determine the price we will accept from the customer. **Merchant revenues include (1) transaction revenues representing the selling price of *Name Your Own Price®* hotel rooms**, rental cars and airline tickets and price-disclosed vacation packages; (2) transaction revenues representing the amount charged to a customer, less the amount charged by suppliers in connection with the hotel rooms provided through our merchant price-disclosed hotel service; (3) customer processing fees charged in connection with the sale of *Name Your Own Price®* airline tickets, hotel rooms and rental cars and merchant price-disclosed hotels; and (4) ancillary fees, including GDS reservation booking fees related to certain of the services listed above.

…

|                          | Year Ended December 31, ($000) | | |
|--------------------------|------------|------------|------------|
|                          | **2008**   | **2007**   | **Change** |
| **_Merchant Revenues_**  | $ 1,218,162 | $ 1,002,824 | 21.5%   |
| *Agency Revenues*        | 648,792    | 398,246    | 62.9%      |
| *Other Revenues*         | 17,852     | 8,339      | 114.1%     |
| *Total Revenues*         | $ 1,884,806 | $ 1,409,409 | 33.7%   |

**Cost of Revenues and Gross Profit**

|                     | Year Ended December 31, ($000) | | |
|---------------------|------------|------------|------------|
|                     | **2008**   | **2007**   | **Change** |
| *Cost of Revenues*  | $ 928,835  | $ 769,997  | 20.6%      |
| *% of Revenues*     | 49.3%      | 54.6%      |            |

*Cost of Revenues*

> **For the year ended December 31, 2008, cost of revenues consisted primarily of: (1) the cost of *Name Your Own Price*® hotel rooms from our suppliers, net of applicable taxes**, (2) the cost of *Name Your Own Price*® airline tickets from our suppliers, net of the federal air transportation tax, segment fees and passenger facility charges imposed in connection with the sale of airline tickets; and (3) the cost of *Name Your Own Price*® rental cars from our suppliers, net of applicable taxes.  Cost of revenues for the year ended December 31, 2008 increased by 20.6%, compared to the same period in 2007, due primarily to the increase in merchant revenue discussed above.  Merchant price-disclosed hotel revenues in the U.S. and at Agoda are recorded in merchant revenues net of the amounts paid to suppliers and therefore, there is no associated cost of revenues for merchant price-disclosed hotel revenues. (Emphasis supplied)

## **Priceline's Deception**

42.     In the course of their business transactions with consumers under the NYOP Model, Priceline engages in numerous deceptive and misleading misrepresentations, omissions

and concealments, statements, acts and business practices, including but not limited to the following:

42.1     Misrepresenting and misleading consumers into believing that Priceline is an agent acting on the consumers' behalf with the consumers' best interests in mind, and receives only a fee from the consumer for those services. Priceline's actions, omissions and concealments which mislead the consumers to believe that Priceline is an agent acting on their behalf and in their best interests include (i) the online invoice and agreement with the consumer when he/she purchases a room, (ii) Priceline's advertising on the internet and on television, its press releases to the media and public, the statements of its trade organization, the Interactive Travel Services Association, (iii) its lobbyists and other spokespersons' statements while lobbying state and federal legislative bodies, and (iv) its pleadings and briefs filed in numerous courts throughout the country in hotel accommodations litigation brought against Priceline by taxing authorities;

42.2     Misrepresenting and misleading consumers into believing that Priceline is the consumers' agent by hiding the Mark-up of the Wholesale Rate without disclosing its existence or its amount; and

42.3     Failing to state and disclose in the pricing information on Priceline's websites and in the customers' invoice and receipt that the total Retail Room Rate includes Priceline's Mark-up.

43.     Priceline has engaged in, and still engages in, misleading and deceptive business practices by misrepresenting to Plaintiffs that it is an agent (and not a vendor, co-vendor or merchant) when its uses the NYOP model to sell rooms to consumers. Having represented and held itself out as acting as an agent rather than merchant and vendor in its transactions with Plaintiffs and other consumers, Priceline has assumed the fiduciary duties and responsibilities of an agent and is estopped from denying the applicability of the fiduciary duties and responsibilities of an agent. Defendant has violated these fiduciary obligations and duties by acting and engaging in the deceptive and misleading business practices and misrepresentations enumerated and described in this Complaint.

## **Class Allegations**

44.     Johnson and Kelly bring this case pursuant to Federal Rule 23(b) (3) as a national action (excluding residents of the state of New York) for breach of contract, breach of fiduciary duties, and deceptive practices on their own behalf and on behalf of the following class of persons ("Plaintiff Class"), defined as follows: "All persons that purchased hotel rooms using Priceline's *Name Your Own Price*® option, except those residing in the state of New York. Also excluded from the class are all customers who did not provide Priceline with an e-mail address, Priceline.com and its employees and agents, and all state and other governmental agencies."

45.     Although the precise number and identities of the Putative Class members are currently unknown, there are many thousands of members of the Putative Class described above,

46.     The members of the Putative Class are so numerous that joinder of all members is

14

impracticable.

47.     Questions of fact and law common to all Putative Class members predominate over questions affecting individual members of the Putative Class, including, but not limited to whether: (1) Priceline was the agent of the Class Members that purchased hotel rooms through Priceline's *Name Your Own Price®* option;  (2) whether Priceline's  failure to disclose that the room price accepted by the hotels was less than the purchaser offered to pay, was a breach of Priceline's contracts with purchasers; (3) whether Priceline's actions on behalf of purchasers were contrary to its fiduciary duties when Priceline failed to inform purchasers of its profit in its purchase of hotel rooms; (4) whether Priceline's undisclosed and secret profits gained while acting as agent for the members of the Putative Class must be disgorged and paid over to the members of the Putative Class, and (5) whether Priceline.com's retention of a secret profit while acting   as agent and its  non-disclosure violates the Connecticut Common Law and Connecticut Unfair Trade Practices Act.

48.     Plaintiffs' Claims are typical of the claims of the Putative Class because Priceline.com's deceptive non-disclosure and retention of its secret profits in the purchase of hotel rooms at less than what purchasers bid under its *Name Your Own Price®* program and its mass breach of contract affected Plaintiffs and the Putative Class in the same manner.

49.     Johnson and Kelly will fairly and adequately represent and protect the interests of the Putative Class. The interests of Johnson and Kelly are coextensive with and not antagonistic to the interests of the other Putative Class members.

50.     Plaintiffs' counsel are skilled and experienced in  litigation, has associated with counsel who have class action experience,  and will adequately represent the class.

51.     The questions of law and fact common to the members of the Putative Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Putative Class members is impracticable.

53.     Because the damages suffered by individual members of the Putative Class may be small, the expense and burden of individual litigation makes it impossible for the members of the Putative Class individually to redress the wrongs done to them.

54.     Finally, the Putative Class is readily definable and prosecution of the action as a class action will eliminate the possibility of repetitious litigation.  There will be no difficulty in the management of this action as a class action.

## COUNT I
## BREACH OF FIDUCIARY DUTY

55.     Plaintiffs reallege and incorporate each of the above allegations.

56.     Priceline, holding itself out as an agent for the Plaintiffs, breached its fiduciary duties, responsibilities and obligations and placed its own pecuniary interests above that of the Plaintiffs and other consumers by engaging in deceptive and misleading business practices, acts, omissions, misrepresentations, and concealments described above.

57.     Priceline's breach of its fiduciary duties, responsibilities and obligations was a substantial factor in causing the Plaintiff Class' injury.  Plaintiffs were not made aware that:

16

57.1    Priceline was purchasing hotel rooms for a price less than the price Plaintiffs bid when Priceline matched Plaintiffs' offer with rooms from hotels willing to accept lower prices;

57.2    additional secret profits were retained by Priceline in addition to those fees revealed to Plaintiffs; and,

57.3    Priceline could have procured the room for the Plaintiffs at a lower price than the bid offered by the Plaintiffs, or Priceline could have obtained a superior room for the amount Plaintiffs' bid if the price they bid had been paid to the hotel instead of the lower price Priceline actually paid to the hotel.

58.    As a direct and proximate result of Priceline's breaches of fiduciary duties, responsibilities, and obligations, Plaintiffs and the Putative Class have suffered, and will continue to suffer injury, including damages in an amount to be determined at trial.

59.    Priceline also should be required to disgorge any profits earned as a result of these breaches of its fiduciary duties, responsibilities and obligations.

60.    The profits Priceline has retained constitute a Constructive Trust for the benefit of Plaintiffs.

61.    Failure to disgorge any profits retained by Priceline will unjustly enrich it at the expense and to the detriment of the Plaintiffs.

62.    Priceline's breaches of its fiduciary duties, responsibilities, and obligations were intentional, deliberate, fraudulent, willful, wanton and directed to the public generally. Accordingly, the Plaintiff Class is entitled to an award of punitive damages.

17

## COUNT II
## BREACH OF CONTRACT

63.     The Plaintiffs reallege and incorporate each of the above allegations.

64.     Priceline requires every consumer booking a room through its NYOP option to agree to certain terms and conditions.  These terms and conditions are a contract (denominated as an "Agreement" by the Priceline).  Consistent with Priceline's policy and practice, each member of the Plaintiff Class entered into the Priceline's Agreement.

65.     Plaintiffs and each member of the Plaintiff Class performed his or her obligations under the Agreement.  The Agreement requires, among other things, the consumer to agree to permit Priceline to charge the consumer's credit or debit card for the total sales price and each member of the Plaintiff Class complied with that requirement.

66.     By engaging in the deceptive practices set forth previously in this Complaint, Priceline breached the Agreement.

67     By engaging in the deceptive practices set forth above, Priceline also breached the implied covenant of good faith and fair dealing.

68.     The Plaintiff Class has been damaged by Priceline's pervasive breach of the contract in an amount to be determined at the time of trial.

69.     The Plaintiff Class is entitled to an award of punitive damages because Priceline's breach is egregious in nature, directly damaged the Plaintiff Class, and is directed to the public generally.  The amount of the punitive damages to which the Plaintiff Class is entitled should be determined at the time of trial.

## COUNT III

## VIOLATION OF CONNECTICUT UNFAIR
## TRADE PRACTICES ACT

70.     Plaintiffs reallege and incorporate each of the above allegations.

71.     The Connecticut Unfair Trade Practices Act, (CUTPA) 735a, Sec. 42-110g, provides a cause of action for "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited in section 42-110b…."

72.     CUTPA Section 42-10b states "(a) no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

73.     By the nondisclosure of material facts alleged herein, Priceline's acts and omissions had the tendency and capacity to deceive Plaintiff and Plaintiff Class.

74.     Priceline's unfair and deceptive conduct occurred in the conduct of trade or commerce.

75.     By unlawful failing to disclose and/or by concealing the true price paid to the hotels for the purchased rooms, Priceline intended that the Plaintiffs and Plaintiff Class rely on the accuracy of the price that it stated the hotels had accepted, and the Plaintiffs and Plaintiff Class relied on the accuracy of those stated accepted prices. Such acts were breaches of Priceline's fiduciary duties to the Plaintiffs and therefore violations of CUTPA.

76.     Priceline's deceptive acts and practices impact the public interest and have the capacity to deceive a substantial portion of the public. The acts are committed in the course of Priceline's business. The acts are part of a pattern or a generalized course of business. The acts were committed repeatedly prior to the acts involving Plaintiffs. There is a substantial potential

for repetition of Priceline's conduct, and many consumers are affected or likely to be affected by these acts.

77.     Priceline's unfair and deceptive acts of devising, calculating, misrepresenting through omission, charging, and collecting from the Plaintiffs and the Plaintiff Class undisclosed profits on the purchase price for hotel rooms have directly, foreseeably, and proximately caused damages to Plaintiffs and Plaintiff Class, and are in violation of the CUTPA, making such deceptive acts and practices illegal and requiring injunctive relief.

78.     Priceline's actions, set forth above, are in violation of CUPTA Section 110b, and Plaintiffs are entitled to recover actual damages under Section 110g.

## **Prayer for Relief**

WHEREFORE, Plaintiffs and Plaintiff Class respectfully request that the Court enter judgment for the Plaintiffs and against Defendant (Priceline):

(a)     In favor of the Plaintiffs on each cause of action asserted in this Complaint;

(b)     For an Order certifying this case as a class action against Defendant and appointing Plaintiffs as Representatives of the Class, and their attorneys as attorneys for the Plaintiff Class;

(c)     For money damages against Defendant and in favor of Plaintiffs and the Plaintiff Class on all claims asserted in this Complaint;

(d)     For costs of suit incurred herein;

(e)     For prejudgment interest to the extent allowed by law;

(f)     For punitive damages and penalties as allowed by law;

(g)     For permanent injunctive relief to enjoin further violations of the law; and

(i)     For such other and further relief as this Court may deem just and proper.

## Jury Demand

Plaintiffs request trial by jury.

PLAINTIFFS LEE E. JOHNSON and
JOEY MARIE KELLY

By:     _____
        Matthew S. Hirsch, Esq. (ct17297)

        Hirsch Law LLC
        55 Corporate Drive
        Trumbull, CT 06611
        (203) 261-5400
        (203) 261-2473 (Fax)
        hirsch@hirsch-law.com
        Fed. Bar No.: ct17297